UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS A.C.,<br><br>                  Petitioner,<br><br>         v.<br><br>MINGA WOFFORD, et al.,<br><br>                  Respondents. | No. 1:26-cv-01017-TLN-EFB<br><br>**ORDER** |

       This matter is before the Court on Petitioner Luis A.C.'s ("Petitioner") Petition for Writ of Habeas Corpus.  (ECF No. 1.)  For the reasons set forth below, the Court GRANTS Petitioner's Petition.

///
///
///
///
///
///
///
///

1

I. **FACTUAL AND PROCEDURAL BACKGROUND**

The instant action arises from Petitioner's allegedly unlawful detention. (*See* ECF No. 1.) Petitioner is a citizen of Nicaragua who entered the United States without inspection on October 25, 2022. (ECF No. 1 at 2.) On October 26, 2022, Petitioner was paroled into the United States by U.S. Immigration and Customs Enforcement ("ICE"). (*Id.*) Petitioner was required to check-in with ICE via a photo submission on a phone application every Friday. (*Id.*)

On October 27, 2022, ICE directed Petitioner to appear for a check-in at their office in San Jose, California on December 14, 2022. (*Id.*) Petitioner was informed at this appointment that a weekly Friday photo check-in was sufficient for reporting and he did not need to appear in person any longer. (*Id.*)

On December 29, 2023, Petitioner filed an asylum application. (*Id.* at 13; ECF No. 2-1 at 7.) On August 22, 2024, Petitioner was issued a work permit based on asylum. (ECF No. 2-1 at 7.)

Petitioner complied with the reporting requirements until the application stopped working at the end of October 2025. (*Id.*) Petitioner communicated with ICE and went to the ICE office in November 2025 to report the problem in person. (*Id.*) An ICE officer provided Petitioner with an appointment to appear on December 1, 2025. (*Id.*) Petitioner was detained when he appeared for this appointment. (*Id.*)

On February 5, 2026, Petitioner filed a Writ of Habeas Corpus, challenging the lawfulness of his civil detention. (*See* ECF No. 1.) On February 6, 2026, this Court granted Petitioner's motion for TRO and ordered Respondents to show cause why the Petition should not be granted. (ECF No. 8.) Respondents did not file a response. The Court accordingly considers Petitioner's argument on its merits.

II. **STANDARD OF LAW**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure

2

release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### III. ANALYSIS

In his Petition for Writ of Habeas Corpus, Petitioner claims he is being unlawfully subjected to mandatory detention in violation of procedural due process.[1] (*See* ECF No. 1.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

#### A.   Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1182 (D. Haw. 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a

---

[1] Petitioner also asserts claims for violation of substantive due process, the Immigration and Nationality Act ("INA"), and the Administrative Procedure Act ("APA"). (ECF No. 1 at 20–22.) The Court finds it need not address Petitioner's additional claims to rule on the Petition, as these claims seek the same relief Petitioner seeks in his procedural due process claim.

protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original)). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, the Court finds Petitioner gained a liberty interest in his continued freedom, as he was paroled into the United States and remained at liberty for three years. (ECF No. 1 at 7–8.) Petitioner also asserts he regularly complied with ICE reporting requirements during his three years out of custody. (*Id*. at 2.) Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release. As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom as he awaits the outcome of his asylum proceedings. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

### B. Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set

forth below, the Court finds Respondents violated Petitioner's due process rights were violated.

First, Petitioner has a substantial private interest in remaining free from detention. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner was released from ICE custody on October 26, 2022, and cooperated with the conditions of his release by appearing for required reporting for three years. (ECF No. 1 at 2.) Petitioner asserts he has lost his liberty and has been separated from his family and community with no opportunity to contest his detention. (*Id*. at 11.) Accordingly, these factors weigh in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention. Petitioner maintains that he has not been given any bond hearing. (*See* ECF No. 1 at 11); *see also Manzanarez*, 2025 WL 3247258, at *4 (quoting *A.E. v. Andrews*, No. 25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing.")). Thus, the Court finds Petitioner was likely erroneously deprived of his liberty interest. Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a

noncitizen presents a risk of flight or danger to the community." (cleaned up)).

Petitioner argues Respondents have no basis for his present detention when he has lived in the community without incident for more than three years. (*Id*. at 12.) Petitioner further asserts that the government faces low or minimal hardship because the administrative costs associated with his release or the provision of a bond hearing is less costly than his continued detention. (*Id.*) The Court agrees. The cost and time of procedural safeguards are minimal here. Notice and custody determination hearings are routine processes for Respondents. Any delay in detention (if justified) for the time to provide notice and a hearing would be minimal. Moreover, it would be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his asylum application than to continue to detain him. (*See id.*); *see also Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

The Court finds that, under these circumstances, Respondents are required to provide notice and a pre-deprivation hearing. The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129. Here — where Petitioner has substantially complied with the conditions of his release and there is no final order of removal — the Court finds pre-deprivation notice and a hearing are possible and valuable to preventing erroneous deprivation of liberty. Further, Respondents have not provided any substantive opposition to the contrary.

On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to pre-deprivation notice and hearing to determine whether detention was warranted. Respondents did not provide either. Moreover, Respondents did not provide a post-deprivation opportunity to be heard. The Court accordingly finds Respondents violated Petitioner's procedural due process rights.

///

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.) Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future; or (b) Respondents demonstrate by clear and convincing evidence before a neutral decisionmaker that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present.

The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: March 12, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE